**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEFONE BEATTY, | : | |
| | : | |
| Plaintiff, | : | Civil Action: 09-0333 (AET) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| MR. FRAZIER, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

Stefone Beatty, Pro Se
#606383
Southern State Correctional Facility
P.O. Box 150
Delmont, NJ 08314

**THOMPSON,** District Judge

Plaintiff Stefone Beatty, a prisoner confined at the Southern State Correctional Facility, Delmont, New Jersey, brings this civil action alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. Plaintiff submitted an application to proceed in forma pauperis, in accordance with 28 U.S.C. § 1915. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  For the following reasons, the complaint will be dismissed, without prejudice.

## BACKGROUND

Plaintiff states that on February 4, 2008, he was exercising on a pull-up machine at the Monmouth County Correctional Institution.  While pulling himself up, the machine fell backwards and landed on top of him.  The machine was not secured to the floor, but the base of the machine was shoved up under a radiator.  Due to his fall, plaintiff received numerous injuries, including bruised knees, strained back, fractured ribs, and bruised hips.

After the fall, plaintiff was taken to the medical unit and seen by a nurse practitioner.  Pictures were taken of his injuries, and he was given Tylenol for pain and advised that he would be scheduled for x-rays and put on the list to see the doctor.  Thereafter, the following occurred:

February 5, 2008:   Plaintiff saw the doctor who ordered two injections and ordered x-rays.

2

February 8, 2008:     X-rays were taken and plaintiff was
                      assigned to the medical unit and given
                      Tylenol #3 with codeine for pain.

February 11, 2008:    Plaintiff saw the doctor and was advised
                      that the results of the x-ray were not
                      back.  The doctor reordered the x-rays.
                      The reordered x-rays were never done.

February 27, March 3, and March 7, 2008:  Plaintiff returned
                      to medical.  The x-ray results were not
                      back.

March 11, 2008:       Plaintiff saw the doctor who ordered
                      medications for his pain and swelling.

March 17, 2008:       Plaintiff's name was on the medical
                      list, but when he got there, a nurse
                      advised him to sign a refusal since he
                      was on the list to see the doctor the
                      next day.  However, he was never
                      recalled down the next day to see the
                      doctor.

March 19, 2008:       Plaintiff submitted a grievance on the
                      medical department.

March 27, 2008:       Plaintiff went to medical and was put on
                      the list to see the doctor.

3

March 28, 2008:      Plaintiff saw the doctor, who increased
                     his dosage of medicine.  The doctor
                     advised plaintiff that plaintiff would
                     not see an orthopedic doctor, and that
                     the x-ray results were not back.

March 31, 2008:      Plaintiff saw the doctor who advised him
                     that he needed to see an orthopedic
                     doctor.  Plaintiff received a response
                     to his grievance against the medical
                     department.

April 8, 2008:       Plaintiff submitted another grievance
                     against the medical department for lack
                     of treatment.

April 10, 15, 2008:  Plaintiff was seen at sick call and
                     advised he would be evaluated by the
                     doctor.  Plaintiff received a response
                     to his grievance.

April 17, 2008:      Plaintiff saw the doctor again for pain
                     and for a clicking sound in his lower
                     back.  Plaintiff was asked if he had any
                     blood in his urine, and was told that
                     the jail would not pay for an MRI.  He
                     was told he could get an MRI when he got
                     to state prison.

4

April 30, 2008:       Plaintiff returned to medical and his

                      Tylenol was extended for two weeks.

Plaintiff states that as of the date he filed the complaint, he continued to experience a lot of pain in his ribs and back. He is still prescribed medications for pain and swelling.  He claims that he did not receive proper treatment.  Plaintiff further alleges that various defendants failed to ensure the pull-up machine was properly installed.

Plaintiff asks for monetary relief due to the negligence of defendants, and disregard for the treatment of his injuries.

**DISCUSSION**

**A.   Standard for Sua Sponte Dismissal**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e) and 1915A, that a court must dismiss, at the earliest practicable time, actions

that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of

6

allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

## B.    Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48

7

(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C.  <u>Plaintiff's Medical Care Claim</u>

Plaintiff asserts that he was not properly treated for his injuries.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege a serious medical need and behavior on the part of prison officials that constitutes deliberate indifference to that need. <u>See</u> <u>id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must allege facts indicating that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  <u>See</u>

Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  "Deliberate indifference" is more than
mere malpractice or negligence; it is a state of mind equivalent
to reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's
subjective dissatisfaction with his medical care does not in
itself indicate deliberate indifference.  See Andrews v. Camden
County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis,
551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th
Cir. 1984).  Similarly, "mere disagreements over medical judgment
do not state Eighth Amendment claims."  White v. Napoleon, 897
F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt
to second-guess the propriety or adequacy of a particular course
of treatment ... [which] remains a question of sound professional
judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d
754, 762 (3d Cir. 1979) (internal quotation and citation
omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation.  See Estelle, 429 U.S. at 105-
06; White, 897 F.3d at 110.

9

In the instant case, even assuming that Plaintiff's injuries amount to a "serious" medical need, Plaintiff has not alleged facts indicating that the defendants were deliberately indifferent to his needs.  Plaintiff was able to consult with and be treated by different doctors on numerous occasions, was treated for all complaints, and received (and continues to receive) medication.  He was seen on sick call at the medical unit by the nurse practitioner, as outlined above, on numerous occasions.  Plaintiff's complaint, liberally construed, alleges facts indicating no more than a disagreement with medical professionals about course of treatment, as a result of his condition not improving.

Because plaintiff has failed to establish an Eighth Amendment violation, his complaint will be dismissed for failure to state a claim upon which relief may be granted.  However, the dismissal will be without prejudice to plaintiff filing a motion to reopen and submitting an amended complaint in accordance with the attached order, that addresses the deficiencies as outlined above.

**D.   <u>Plaintiff's Negligence Claim</u>**

As noted, to assert jurisdiction under § 1983, a plaintiff must allege facts indicating that the conduct of a state actor deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Plaintiff asserts that various defendants were negligent in their installation of the pull-up machine.  However, it has been held that prison officials are not subject to liability as the result of negligent acts that cause unintended injury to inmates. See Daniels v. Williams, 474 U.S. 327 (1986).  Further,

> "[T]he Due Process Clause is simply not implicated by a *negligent* act of an official."  Section 1983 is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Rather, liability requires "more than ordinary lack of due care for the prisoner's interests or safety."

Litz v. City of Allentown, 896 F. Supp. 1401, 1408 (E.D. Pa. 1995)(emphasis in original)(quoting Daniels, 474 U.S. at 328; State Bank of St. Charles v. Camic, 712 F.2d 1140, 1147 (7th Cir.), cert. denied, 464 U.S. 995 (1983); Whitley v. Albers, 475 U.S. 312, 319 (1986))(other internal citations omitted).  Thus, liability under § 1983 may only be imposed on prison officials when there has been "intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir. 1984) (en banc), aff'd, Davidson v. Cannon, 474 U.S. 344 (1986).  In the instant case, the plaintiff has not pled any facts of deliberate indifference sufficient to impose liability under § 1983.

In a recent Third Circuit case, the plaintiff, a Delaware state prisoner, slipped and fell on a wet floor, injuring his back.  See Bacon v. Carroll, 232 Fed. Appx. 158, 159-160 (3d Cir.

11

2007).  In affirming the District Court's dismissal of the claims pursuant to 28 U.S.C. § 1915, the Third Circuit explained:

> A prison official violates the Eighth Amendment when the prison official is deliberately indifferent to inmate health or safety and when this act or omission results in the denial of "the minimal civilized measure of life's necessities."  Therefore, a prison official can be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference."  Although a wet floor may pose a substantial risk, Bacon's allegations do not reflect the deliberate indifference required to impose liability under the Eighth Amendment.  Because we agree with the District Court that Bacon's claim amounts merely to negligence, his allegations regarding the wet floor are not actionable under § 1983.

Id. at 160 (internal citations omitted).

Therefore, even liberally construing the plaintiff's complaint, the Court finds that it alleges no constitutional violation.  Concerning the pull-up machine, the plaintiff makes negligence claims only, which are state law claims.  He makes no federal constitutional claims of deprivation of his rights, privileges or immunities secured by the Constitution or federal laws.  Thus, the plaintiff has not alleged a proper claim under 42 U.S.C. § 1983.  Again, if plaintiff can correct these deficiencies, he may do so in an amended complaint as outlined in the attached order.

**E.    Potential State Law Claims**

Any potential state law claims regarding this incident will be dismissed by this Court, pursuant to 28 U.S.C. § 1367(c)(3), which states that where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, and because the Court is dismissing plaintiff's complaint under § 1915, this Court will also dismiss the plaintiff's state law claims without prejudice to the plaintiff bringing the claims in state court if he so chooses.

**CONCLUSION**

Based on the foregoing, plaintiff's complaint will be dismissed, without prejudice.  See Alston v. Parker, 363 F.3d 229, 234 n.7 (3d Cir. 2004) (stating that with a complaint that makes "little sense," District Court could have dismissed complaint without prejudice, to permit Plaintiff to amend the complaint to make it plain).  The Court notes that "generally, an

order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." <u>Martin v. Brown</u>, 63 F.3d 1252, 1257-58 (3d Cir. 1995)(quoting <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951 (3d Cir. 1976)).  In this case, if plaintiff can correct the deficiencies of his complaint, he may file a motion to reopen these claims in accordance with the attached order.[1]

                                    s/ Anne E. Thompson
                                   ANNE E. THOMPSON
                                   United States District Judge
Dated: May 7, 2009

---

[1]  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>See</u> <u>id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>See</u> <u>id.</u>